F I L E D
United States Court of Appeals
Tenth Circuit

JUL 23 1997

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

BEN E. MCDADE,

Plaintiff-Appellant,

v.

JOHN J. CALLAHAN, Acting
Commissioner of Social Security,*

Defendant-Appellee.

No.  96-7118
(D.C. No. CV-95-366-S)
(E.D. Okla.)

ORDER AND JUDGMENT**

Before BRORBY, BARRETT, and MURPHY, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  See Fed. R. App. P. 34(f), 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

---

\*    John J. Callahan, Acting Commissioner of the Social Security Administration, is substituted for former Commissioner Shirley S. Chater.  See Fed. R. App. P. 43(c).

\*\*    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Claimant Ben E. McDade appeals from the district court's order affirming the Commissioner's denial of his application for disability insurance benefits and supplemental security income. This court exercises jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and affirms.

**BACKGROUND**

Mr. McDade, who is presently fifty-six years old, alleges disability arising from an incident on April 2, 1992, when he fell backwards from a chair while reading a newspaper at work. At the hearing before the administrative law judge (ALJ), Mr. McDade testified that he was disabled by loss of balance, muscle spasms, sharp pain all over his body, foot drag, a shoulder that locks up, loss of neck motion, difficulty in swallowing, and sleep problems. According to Mr. McDade, the resulting limitations were that he could lift five or ten pounds without losing his balance, sit for thirty-five minutes before his side starts burning, stand for up to thirty-five minutes, walk four blocks before becoming tired, bend halfway down, move his neck to the left but not the right, and reach to the side but not overhead.

Medical records show that, beginning one week after his fall, Mr. McDade sought medical treatment, reporting symptoms of steadily progressing intensity. His treating physicians were unable to explain the severity of the problems he described. On August 25, 1992, a neurological surgeon diagnosed Mr. McDade

-2-

with radiculitis[1] and recommended a lumbar selective nerve block.  The procedure was performed, but at a follow-up examination Mr. McDade stated that he experienced no relief.  In February 1993, while undergoing physical therapy, he began to complain of neck problems.  The neurological surgeon diagnosed cervical myelopathy[2] secondary to C5-6 disc herniation and performed a cervical disketomy and fusion.

After considering the evidence, including medical records and testimony by Mr. McDade and a vocational expert, the ALJ applied the five-step sequential evaluation process and determined that Mr. McDade was not under a disability as defined in the Social Security Act.  See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).  A key to this determination was the ALJ's finding that Mr. McDade's testimony was credible only "to the extent that it is consistent with the performance of light work activity, with occasional stooping, bending, twisting and balancing."  Appellant's App., Vol. II at 21.  The ALJ specified numerous reasons for discounting many of the impairments which Mr. McDade reported to his physicians or raised in his testimony.

---

[1]     Radiculitis is defined as an "[i]nflammation of the intradural portion of a spinal nerve root . . . ."  Stedman's Medical Dictionary 1308 (25th ed. 1990).

[2]     Myelopathy is defined as a "[d]isturbance or disease of the spinal cord." Stedman's Medical Dictionary at 1013.

At step four of the evaluation process, the ALJ decided that Mr. McDade did not have the residual functional capacity to perform his past relevant jobs of bus driver and chief of a road paving crew, but could perform his past jobs of expeditor and truck driver. Alternatively, at step five, the ALJ determined that the Commissioner had shown that there were other jobs existing in significant numbers in the national economy, consistent with Mr. McDade's impairments and limitations.

The Appeals Council denied Mr. McDade's request for review so that the ALJ's decision became the final decision of the Commissioner. Upon judicial review in the district court, the magistrate judge recommended affirming the Commissioner's decision and the district court adopted the recommendation.

## DISCUSSION

On appeal, Mr. McDade contends that (1) in determining his residual functional capacity, the ALJ failed to consider the effects of his impairments and did not link the credibility analysis to specific evidence; (2) in the step four determination, the ALJ failed to make a proper evaluation of the physical demands of his past relevant work and his ability to meet them; and (3) in the step five determination, the Commissioner failed to produce substantial evidence that

he could perform a significant number of the alternative jobs cited by the vocational expert.[3]

This court reviews the Commissioner's decision to determine whether his factual findings were supported by substantial evidence in the record viewed as a whole and whether he applied the correct legal standards. See Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (further quotations omitted). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. See Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).

First, Mr. McDade argues that the ALJ erred in determining his residual functional capacity. Essentially, his contention is that the ALJ did not acknowledge all his claimed limitations. The ALJ, however, properly considered Mr. McDade's subjective complaints in light of the objective evidence, see Kepler v. Chater, 68 F.3d 387, 390-91 (10th Cir. 1995) (discussing proper consideration

---

[3]    We note that Mr. McDade did not present the step five issue to the Appeals Council. Nonetheless, the court will not apply a waiver rule in this case because, at the time he appealed to the Appeals Council, Mr. McDade did not have notice of James v. Chater, 96 F.3d 1341, 1344 (10th Cir. 1996) (holding "issues not brought to the attention of the Appeals Council on administrative review may, given sufficient notice to the claimant, be deemed waived on subsequent judicial review.").

of complaints of disabling pain), and specifically linked the credibility findings to substantial evidence in the record, see Winfrey v. Chater, 92 F.3d 1017, 1020 (10th Cir. 1996). In doing so, the ALJ decided to credit some of Mr. McDade's alleged limitations and discount others. This determination is peculiarly within the province of the finder of fact, see id., and the record on appeal presents no reason to upset it.

Mr. McDade also claims error in the ALJ's determination that he could perform two of his four past jobs, the positions of expeditor and truck driver. After determining the claimant's residual functional capacity, an ALJ has a duty at the step four level to make findings regarding the physical and mental demands of the claimant's past relevant work and the ability of the claimant to perform those demands. See Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993). A vocational expert may supply information to the ALJ about the claimant's past relevant work as it is generally performed in the national economy. See Winfrey, 92 F.3d at 1025; Social Security Ruling 82-61 (SSR 82-61).

From this record, it appears doubtful that Mr. McDade's limitations permit him to perform the position that he called "expeditor." Mr. McDade testified that, in this job, he "fixed kits for welders for trucks," and had to lift "up to 35, 40 pounds." Appellant's App., Vol. II at 281-82. The vocational expert, without

elaborating on the duties of the position as generally performed, testified that it required only light exertion.

Both the ALJ and the vocational expert used the term "expeditor" to refer to a generic classification of jobs, without identifying the particular functional demands of Mr. McDade's past job, either as performed by him or in the national economy. SSR 82-61 specifically warns against this practice, stating that the use of a "broad generic, occupational classification" will lead to a "fallacious and unsupportable" step four finding. See Evans v. Shalala, 21 F.3d 832, 834 (8th Cir. 1994). To the extent that the ALJ's step four determination is dependent on Mr. McDade's ability to be an "expeditor," it is erroneous.

The ALJ, however, also found that Mr. McDade could perform his past relevant work as truck driver. Mr. McDade's sole contention on this finding is that he lacks the residual functional capacity to do the job, because he does not have the strength to push pedals or the ability to move his neck. As noted above, it was the ALJ's prerogative to disbelieve Mr. McDade's testimony on these limitations. Based on his findings concerning the job of truck driver, the ALJ correctly denied benefits at the step four level.

The above conclusion is dispositive of Mr. McDade's appeal. See Murrell v. Shalala, 43 F.3d 1388, 1389-90 (10th Cir. 1994). An additional basis for affirming the ALJ's denial of benefits, however, can be found in the step five

determination that Mr. McDade was capable of performing other jobs which exist in significant numbers in the national economy. At step five, the Commissioner satisfies the burden of proving that the claimant is not disabled if his decision is supported by substantial evidence. See Miller v. Chater, 99 F.3d 972, 975 (10th Cir. 1996).

At the hearing, the ALJ presented a hypothetical question to the vocational expert, setting forth an individual of Mr. McDade's age, education, and work experience and describing the limitations he found credible and supported by the evidence. Cf. Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990) (observing that a vocational expert's response to a hypothetical is not binding on the ALJ if the question sets forth impairments which the ALJ does not accept as true). The vocational expert responded that such an individual could perform other jobs at the light and sedentary levels, such as hand packager and filler. She testified that there were at least 225,000 of these positions in the national economy and 2,400 in Oklahoma. A sit and stand option reduced these numbers by only twenty percent.

Mr. McDade suggests that the vocational expert's statistics were flawed and that her characterization of the exertional levels of the alternative positions was incorrect. The ALJ established the expert's education and experience, probed for bias, and allowed Mr. McDade's attorney to question the expert. Under these

circumstances, we will not question the reliability of the testimony.  See <u>Trimiar</u> <u>v. Sullivan</u>, 966 F.2d 1326, 1330-31 (10th Cir. 1992).  Plainly, the testimony supplies substantial evidence of a significant number of positions which Mr. McDade could perform.

## CONCLUSION

After a careful review of the entire record, we agree with the district court that the ALJ applied the correct legal standards and that the record contains substantial evidence supporting the ALJ's findings and conclusions.  Therefore, the judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.

Entered for the Court

Michael R. Murphy
Circuit Judge